IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA

**JAMES FORREST KOZUL,**
Executor of the Estate of **ROBERT LEE KOZUL, SR.**

    **Plaintiff,**

v.

**UNITED STATES OF AMERICA,**

    **Defendant.**

ELECTRONICALLY FILED
Jul 22 2020
U.S. DISTRICT COURT
Northern District of WV

Civil Action No.: 1:20-CV-143

Judge Thomas S. Kleeh

## COMPLAINT

Comes now Plaintiff, James Forrest Kozul, as Executor of the Estate of Robert Lee Kozul, Sr., and for his cause of action against the defendant, states as follows:

1. Plaintiff, James Forrest Kozul, is the son of Ret. Corporal Robert Lee Kozul, Sr, deceased. Plaintiff was duly appointed Executor of the Estate of Robert Lee Kozul, Sr. by the Marion County Commission and brings these claims for relief for the benefit of the family and Estate of Robert Lee Kozul, Sr.

2. The Defendant United States of America, through the United States Veterans Health Administration and the United States Department of Veterans Affairs ("VA"), at all times alleged herein is the federal governing body responsible for funding, operating, administering, controlling, supervising, and managing the business and employment affairs, and implementing the healthcare program of the VA available to eligible military veterans. The Louis A. Johnson VAMC located in Clarksburg, West Virginia, is one of the many VA Medical Centers operated by the United States of America through the United States Veterans Health Administration and the United States Department of Veterans Affairs ("VA").

3. Glenn R. Snider Jr., MD, FACP is, and was at all relevant times, the Medical

Center Director of the Louis A. Johnson VA Medical Center in Clarksburg, West Virginia. Previously, Dr. Snider served as the Chief of Staff at the Clarksburg VAMC since 1999, and as such was an agent/and or employee of the Defendant, The United States of America.  The United States of America, through the U.S. Department of Veterans Affairs holds Dr. Snider, as the Medical Center Director, responsible for the overall delivery of quality care to the Veterans served by the Clarksburg VAMC.

4. Dr. Snider operated the Clarksburg VA through a Leadership Team, who were all agents and/or employees of the Defendant, The United States of America.  Dr. Snider, his Leadership Team, hospitalist physicians, nursing management, nurse, staff, and pharmacy inventory management violated non-discretionary rules, directives, and protocols they were required to follow to deliver safe quality medical care to Veterans. The violations of these non-discretionary rules, directives, and protocols were a cause of Robert Lee Kozul Sr.'s death.

5. The United States of America, employed Dr. Glen Snider, Clara Wang-Liang, MD, Jaclyn Gabriel, DO, Tyler Hartzel, RN, Devin Longo, RN, Reta Mays, nurses, respiratory therapist, and assistants to nurses, who participated in causing or failing to prevent the acute severe hypoglycemia event, negligent post-event management, and death of Ret. Corporal Robert Lee Kozul.

6. The United States of America is legally liable for the medical negligence of its employed physicians, nurses, pharmacy personnel, technologists, and nursing assistants, and is liable for the violations of non-discretionary rules, directives, and protocols by Dr. Snider, and his Leadership Team, hospitalist physicians, nursing management, and pharmacy inventory management which were a cause of Ret. Corporal Robert Lee Kozul, Sr.'s wrongful death.

7. Plaintiff's cause of action arises under the Federal Tort Claims Act of 1948, 28 U.S.C. §§1346(b), 2671, *et seq.*, 38 U.S.C. §7316(a) and (f), West Virginia Code §§55-7B-1, *et seq.*, and West Virginia Code §55-7-6.

8. This Court has jurisdiction pursuant to 28 U.S.C. §1346(b). Pursuant to 28 U.S.C. §1391(e), venue is proper in the Judicial District where a substantial number of the events involved occurred or where the plaintiff resides, if there is no real property at issue. All the acts and omissions which give rise to the claims occurred in Clarksburg, Harrison County, West Virginia.

9. On November 11, 2019, Plaintiff submitted an administrative claim Form-SF95 to the Department of Veterans Affairs. On December 16, 2019, the U.S. Department of Veterans Affairs sent Plaintiff, through counsel, a letter acknowledging receipt of the administrative claim. More than six months have passed since Plaintiff's submission of the administrative claim and no acceptance or payment of the claim has occurred. Attempts have been made to contact the United States concerning the administrative claim and no response was received. Plaintiff deems the lack of response, acceptance, or payment of the claim to be a denial under 28 U.S.C. §2675(a). Plaintiff has exhausted his administrative remedies.

10. Plaintiff has also complied with the filing requirements of the West Virginia Medical Professional Liability Act set forth under *W.Va. Code* §55-7B-6.

11. Prior to January 29, 2018 the Louis A. Johnson VAMC in Clarksburg, West Virginia experienced a noticeable and statistically appreciable high death rate in patients admitted on Floor 3A. A clear pattern emerged in these dying patients demonstrating a sudden, unexpected severe decline in their respective medical condition during the night shift hours between 1:00 am and 7:00 am followed by death in patients admitted on floor 3A. In patients who fit this pattern that

had glucose testing, some of whom did not, the test results revealed sudden severe unexplained hypoglycemia.

12. Floor 3A was not an intensive care unit for patients at risk of sudden death. A relatively small number of physicians and small number of nursing staff worked on the night shift on Floor 3A. The VAMC night shift staff on 3A knew there was an abnormally high number of patients experiencing sudden unexplained declines and knew that the floor rate for events of sudden severe unexplained hypoglycemia was unheard of in the national hospital industry.

13. The VA defines Adverse Events as untoward incidents, diagnostic or therapeutic misadventures, iatrogenic injuries, or other occurrences of harm or potential harm directly associated with care or services provided within the jurisdiction of the Veterans Healthcare System. VHA Handbook 1004.08 and VHA Handbook 1050.01. The VA defines a Sentinel Event as a type of Adverse Event that is an unexpected occurrence involving death. VHA Handbook 1050.01.

14. Reporting of adverse events is the primary mechanism through which the Veterans Health Administration National Center for Patient Safety learns about VA system vulnerabilities and how to address them. Through reported adverse events by VA medical facilities, the root causes and contributing factors are identified to prevent future events from reoccurring within the facility. VHA Handbook 1050.01. In short, the adverse event must be reported so it can be investigated, the cause of harm identified, and future harm to patients stopped. VHA Handbook 1050.01.

15. Well before the events alleged herein, according to the VA Office of Inspector General, the watchdog arm of the Department of Veterans Affairs, The Louis A. Johnson

VA Medical Center, under the direction of Dr. Snider and his Leadership Team, had a history of failing to identify, report and track sentinel events that occurred at the Clarksburg VAMC, which in turn resulted in a pattern and practice of not performing appropriate root cause analysis investigations to prevent similar future events from reoccurring within the facility.

16. The Floor 3A physicians and nursing management, and Dr. Snider as the Medical Center Director, had non-discretionary obligations to identify and report the Floor 3A night shift's unexpected deaths and patient declines, as well as the sudden severe unexplained hypoglycemia related deaths as Adverse Sentinel Events. VHA Handbook 1050.01.

17. As part of the Patient Safety algorithm associated with Adverse Sentinel Event Reporting, the Floor 3A physicians, nursing management, Dr. Snider, and his Leadership Team had non-discretionary duties to take appropriate care of the impacted patient, make the situation safe, prevent immediate recurrence, notify police or security, preserve evidence and relevant information that will aid in fully understanding the situation. VHA Handbook 1050.01. The Floor 3A physicians, nursing management, Dr. Snider, and his Leadership Team violated all these non-discretionary duties.

18. The violations of these non-discretionary obligations resulted in the failure to identify system vulnerabilities and failures that were causing patient deaths; the failure to identify the root-cause factors contributing to the patient deaths; and the failure to prevent future similar death events, including the death of Ret. Corporal Robert Lee Kozul, Sr.. The violations of these non-discretionary obligations and duties by Dr. Snider, his Leadership Team, the Floor 3A physicians, and nursing management were a continuation of this VAMC's pattern and practice of failing to identify, report and track sentinel events and failing to perform appropriate root cause

analysis investigations to prevent similar future events from reoccurring within the facility.

19. There is an unwavering ethical obligation to disclose to patients harmful Adverse Events that have been sustained in the course of their Department of Veterans Affairs (VA) care. VHA Handbook 1004.08. This obligation to disclose Adverse Events to patients or to the family of patients who have suffered death from an Adverse Event is a non-discretionary duty imposed on VA hospital physicians, Dr. Snider as the Medical Center Director, Dr. Pramoda Devabhaktuni as the Chief of Staff, Paul Carter as the Associate Director for Patient Care Services, the facility risk manager, and the facility Patient Safety Manager. VHA Handbook 1004.08

20. "Clinicians [physicians] and organizational leaders [Dr. Snider and his Leadership Team] must work together to ensure that disclosure is a routine part of the response to adverse events."  "Honestly discussing the difficult truth that an adverse event has occurred demonstrates respect for the patient and a commitment to improving care." VHA Handbook 1050.01.

21. The explicit intent of the non-discretionary duty to disclose adverse events "is to inform patients about substantive issues related to their care, and not to manage the institution's risk." VHA Handbook 1004.08. "For the patient who is deceased, incapacitated, or otherwise unable to participate in the process of adverse event disclosure, any clinical or institutional disclosure must be communicated to the patient's personal representative". VHA Handbook 1004.08. "Clinical disclosure must be initiated as soon as reasonably possible and generally within 24 hours of occurrence." VHA Handbook 1004.08.  "Institutional disclosure must be initiated as soon as reasonably possible and generally within 72 hours." VHA Handbook 1004.08.

22. Because the Floor 3A night shift's sudden severe unexplained hypoglycemia deaths constituted "a harmful or potentially harmful adverse event which was not an isolated case but rather a systems issue affecting multiple patients", Dr. Snider, his Leadership team, and the VA hospital physicians had a non-discretionary duty to initiate the process for Large Scale Disclosure of Adverse Events. VHA Handbook 1004.08.

23. Robert L. Jesse, M.D., Ph.D., as the Principal Deputy Under Secretary for Health, had a non-discretionary duty to: (1) establish an environment in which senior leaders, including Dr. Snider, "ensure that there is staff understanding of what constitutes an adverse event and that there is a just culture in which VHA program staff, VISN and facility leadership, and facility staff members feel psychologically safe to report such events"; and (2) ensure "that VHA senior leaders establish an environment in which VHA program staff, VISN and facility leadership, and facility staff provide ethically-warranted disclosures to Veterans and/or their personal representative."   VHA Handbook 1004.08.

24. Robert L. Jesse, M.D., Ph.D., and perhaps others, have demonstrated a consistent pattern of violating these non-discretionary duties. The staff of the Louis A. Johnson VAMC at Clarksburg do not feel safe to report Adverse Events and ethically warranted disclosures were not and are not being made to Veterans or their personal representatives.

25. The violations of the non-discretionary obligations by Robert L. Jesse, M.D. Ph.D., the Floor 3A physicians, Dr. Snider, Dr. Devabhaktuni, and Paul Carter to make adverse event disclosures to the personal representatives of patients who experienced unexpected declines and/or deaths during the Floor 3A night shift, including those patients with sudden severe unexplained hypoglycemia related deaths, resulted in a pattern of violations of patient and family

rights; resulted in a failure to provide personal representatives with information needed to make informed consent decisions regarding treatment options and autopsies; and resulted in a failure to prevent future similar death events, including the death of Ret. Corporal Robert Lee Kozul, Sr.

26. The physicians making the pronouncement of death had a non-discretionary duty to refer patients who experienced unexpected declines and deaths during the Floor 3A night shift, including those patients with sudden severe unexplained hypoglycemia related deaths, for autopsy to the Office of the Chief Medical Examiner Forensic Investigative Unit. This non-discretionary duty applied regardless of the interval between the underlying/inciting cause of death and the death itself. See VA Statement of Medical Examiner Criteria set forth in each Pronouncement of Death Record, and MCM #11-110.

27. The Floor 3A physicians violated this non-discretionary duty for every Floor 3A night shift patient who suffered an expected decline and death, including those patients who suffered unexpected, sudden, severe unexplained hypoglycemia related deaths. Moreover, autopsies performed at the time of death flagging unexplained severe hypoglycemia would have revealed exogenous insulin administration as the cause of death.

28. Prior to January 29, 2018 the Floor 3A night shift experienced sudden severe unexplained patient decline leading to patient deaths. Upon information and belief, no Sentinel Event/Adverse Event or root cause analysis was timely reported for any of those deaths; no Adverse Event for Clinical Disclosure or Large Scale Disclosure was initiated; and no physician referral for Autopsy to the Office of the Chief Medical Examiner was made for any of those deaths.

29. The widespread system of failures to perform the non-discretionary Adverse Sentinel Event reporting, mandatory personal representative disclosures, and autopsy referrals

caused Ret. Corporal Robert Lee Kozul, Sr.'s death on January 29, 2018. The failure to timely investigate, report and make a referral for autopsy for his Floor 3A night shift sudden severe unexplained hypoglycemia, resulted in the deaths of many more Veterans.

30. By the time Medical Center Director Dr. Snider alerted the Office of Inspector General (OIG), the watchdog arm of the Department of Veterans Affairs, that many Floor 3A night shift sudden severe unexplained hypoglycemia deaths had occurred, emergency department staff openly commented that if patients were admitted to Floor 3A they would die, and there was active communication among the Clarksburg VAMC staff, including Dr. Snider and the Leadership Team, about the number of unexpected and unexplained deaths long before those deaths were ever reported to the OIG.

31. Dr. Snider as Medical Center Director had additional non-discretionary duties to ensure physicians reported the adverse drug reactions which occurred as part of the Floor 3A night shift sudden severe unexplained hypoglycemia deaths. VHA Directive 1070. Dr. Snider violated the nondiscretionary duties imposed on him to ensure these adverse drug reactions were reported in compliance with VHA Directive 1070, facility based written procedures, and the facility ADE reporting system.

32. Ret. Corporal Kozul was admitted to the Louis A. Johnson VAMC, Clarksburg, through the emergency department on January 18, 2018 for work up after a fall at home. He was discharged on January 21, 2018.  On January 26, 2018, Mr. Kozul was readmitted for workup of vision loss. An MRI of the brain confirmed a stroke. Mr. Kozul was initially admitted to the critical care unit.  His condition improved and he was transferred to Floor 3A.

33. Mr. Kozul was not a diabetic and no insulin was prescribed for him. Recent

9

routine glucose level testing was all within normal range results.

34. Defendant assigned Reta Mays to by Mr. Kozul's 1:1 sitter during the early morning hours of January 29, 2018. At 3:00 am Mr. Kozul became cold and clammy, he became tachycardic, was lethargic, and required transfer to a critical care unit. Plasma drawn glucose testing at 4:14 am demonstrated Mr. Kozul was hypoglycemic with a glucose level of 27. There was no reasonable explanation for the unexplained low glucose level of 27. Dr. Clara Wang-Liang was advised of the low glucose level. She ordered dextrose 50% which was not successful in stabilizing and maintaining a normal glucose level. Serial glucose meter testing ended after 15:39. No blood insulin and c-peptide concentrations were ordered. Dr. Gabriel noted the marked decline in Mr. Kozul's medical condition compared to the day prior. Dr. Gabriel was advised by nursing personnel of the unexplained severe hypoglycemia, but Dr. Gabriel ordered no testing to investigate the cause of the event.

35. Mr. Kozul died at 1:00 am on January 30, 2018.

36. There was no investigation into the cause of Mr. Kozul's severe hypoglycemia when it was first discovered, during his care or after his death. The lack of medical investigation into the cause of the medically unexplained severe hypoglycemia is a deviation from the appropriate standard of medical care.

37. Dr. Wang-Liang and Dr. Gabriel violated medical standards of care in managing Mr. Kozul's sudden unexplained severe hypoglycemia, tachycardia, and lethargy by failing to order plasma glucose, blood insulin and c-peptide concentrations, as well as sulfonylurea administration, careful dextrose and electrolyte management, frequent blood glucose monitoring, and resuscitation measures and immediate work up. There was a complete lack of proper medical

investigation and treatment regarding Mr. Kozul's severe hypoglycemia while there was still an opportunity to provide medical help for the condition. This had become, and continued to be, a pattern and practice of the Clarksburg VAMC when caring for several other similarly situated veterans who were admitted to Floor 3A.

38. Dr. Wang-Liang and Dr. Jaclyn Gabriel further violated medical standards of care by failing to communicate the unexpected nature of the events surrounding Mr. Kozul's change in medical status to Mr. Kozul's family so they could make informed decisions about treatment options. Defendant's acts prevented Mr. Kozul's family from knowing or reasonably discovering the cause of Mr. Kozul's death until years later when he was disinterred, an autopsy was performed, and Defendant's expert performed toxicology analysis.

39. Although Mr. Kozul met mandatory criteria for referral to the State Medical Examiner, Dr. Wang-Liang wrongfully determined that he did not and failed to make the mandatory referral. Dr. Wang-Liang failed to advise Mr. Kozul's family that his change in medical status and his death were an Adverse Event and a Sentinel Event and that his death met the mandatory criteria for autopsy referral.

40. Mr. Kozul's sudden severe hypoglycemia of 27 with an inability to stabilize was not consistent with or caused by any diagnosis made by Dr. Clara Wang-Liang, Dr. Jaclyn Gabriel, or any other natural, medically explainable event.

41. Dr. Clara Wang-Liang failed to comply with medical standards of care in issuing her stated cause of death.

42. Mr. Kozul's unexpected decline and death on the Floor 3A night shift and his sudden severe unexplained hypoglycemia event were similar to the pattern of events occurring

11

with prior Floor 3A night shift death events.

43. At all times alleged herein, Dr. Snider, his Leadership Team, hospitalist physicians, nursing management, and pharmacy inventory management assumed a non-discretionary special obligation or duty of protective care to Mr. Kozul when they accepted him as a hospital patient to protect him against foreseeable injurious acts of third persons, including members of the VAMC staff. This special obligation of protective care also extended to veteran patients who were similarly situated to Mr. Kozul. This duty was only heightened by the age and physical infirmities of Mr. Kozul and other similarly situated veterans. Here, the hospital-patient relationship imposed a special duty on the VAMC to take reasonable precautions to protect patients like Mr. Kozul from wrongful conduct by third parties, including VAMC staff, which could have and should have been reasonably anticipated given the events taking place on Floor 3A and other lax and absent safeguards required and expected in such facilities.

44. Dr. Wang-Liang, Dr. Gabriel, Dr. Snider as the Medical Center Director, Dr. Pramoda Devabhaktuni as the Chief of Staff, Paul Carter as the Associate Director for Patient Care Services, the facility risk manager, and the facility Patient Safety Manager had a non-discretionary duty to identify and report Mr. Kozul's death as an Adverse Sentinel Event, perform a Clinical Disclosure, and refer for Large Scale Disclosure. Tyler Hartzel, RN, Devin Longo, RN, and other nurses had a non-discretionary duty to identify and report Mr. Kozul's sudden change in medical condition as an Adverse Event. The failure to timely complete these non-discretionary duties resulted in a root cause analysis not being performed to protect and prevent the future deaths of more Veterans. As a result, several more Veterans died from hypoglycemic events and other explained declines and deaths after January 29, 2018.

45. Because Mr. Kozul's family was not advised of the sudden and unexplained nature of Mr. Kozul's hypoglycemic event, all the prior similar events occurring on Floor 3A, all the other unexpected and undetermined patient declines and/or deaths, and that Mr. Kozul's change in condition and death was considered an Adverse Event and a Sentinel Event, no autopsy was performed or demanded at the time of death. In September 2019, Mr. Kozul's body was disinterred and an autopsy was performed at Dover Air Force Base, and thereafter investigation was performed by an expert endocrinology consultant for Defendant United States of America.   The Defendant's expert consultant concluded Mr. Kozul's hypoglycemic event was caused by the administration of exogenous insulin.  The Dover Air Force Base Medical Examiner issued an Amended Autopsy Report on April 24, 2020, and for the first time declared Mr. Kozul's death was caused by exogenous insulin administration while he was hospitalized at the Louis A. Johnson VAMC, Clarksburg.

46. An employee of the VAMC injected Mr. Kozul with insulin during the night shift of January 29, 2018. No physician order was issued for the insulin injection. The VAMC employee who administered the insulin shot violated nursing standards of care by administering insulin to Mr. Kozul.

47. The VAMC employee who administered the insulin shot violated nursing standards of care and non-discretionary duties by failing to document and report Mr. Kozul's adverse medication event. These violations occurred while the VAMC employee who administered the insulin shot was on-the-clock, on Defendant's premises, using Defendant's equipment and insulin, and it was within this employee's scope and course of her employment and part of her job duties to document and report Mr. Kozul's adverse medication event following the administration

of insulin so that he could receive appropriate and timely life-saving treatment. See VHA Directive 1070 and others.

48. Dr. Snider, his Leadership Team, nursing managers on Floor 3A, Tyler Hartzell, RN, Chief of Pharmacy/Pharmacy Supervisor, other nurses and other VA employees violated standards of care and non-discretionary duties related to the control and handling of "high risk medications", which include insulin, by failing to securely store insulin and prevent free access by unauthorized personnel; by stockpiling insulin in patient care areas in far greater amounts than needed for actual use; by failing to keep insulin stored in a locked area with a point of care dispensing system; by failing to limit access to medications to staff with an appropriate clinical need; failing to document the ordering and administration of high risk medications; failing to use a bar coding system before high risk medications were administered; by failing to "require additional controls over high risk medications to reduce the likelihood of intentional or unintentional untoward use"; by failing to have its Chief of Pharmacy/Pharmacy Supervisor review how high risk medications were in fact being stored, handled and controlled; and by failing to follow the "Joint Commission and Institute for Safe Practices (ISMP) recommendations to ensure the highest standard possible". See VA Medical Center, Clarksburg, WV Memorandum No. 119-27. Subject: High Risk Medication: dated April 2015. Dr. Snider, his Leadership Team, nursing managers on Floor 3A and pharmacy personnel violated standards of care and non-discretionary duties by failing to track, perform insulin reconciliations, enforce safe insulin storage and safe administration of insulin. See VHA Directive 1014 and others.

49. At all times relevant to the matters asserted in this Complaint, Robert L. Jesse, M.D., Ph.D., as the Principal Deputy Under Secretary for Health, Dr. Snider as the Medical

Center Director, Dr. Pramoda Devabhaktuni as the Chief of Staff, Paul Carter as the Associate Director for Patient Care Services, the facility risk manager, and the facility Patient Safety Manager, Clara Wang-Liang, MD, Jaclyn Gabriel, DO, Tyler Hartzel, RN, Devin Longo, RN, other nurses, and perhaps others, were the agents and employees of the United States of America and were acting in the scope and course of their employment, and were acting in the context of providing medical services or overseeing and administering the provision of medical services. As such, all acts of these individuals are imputed to their employer/principal, Defendant United States of America.

50.   Dr. Snider, his Leadership Team, nursing managers on Floor 3A, and supervisory employees with oversight of the VAMC employee who administered the insulin shot failed to monitor this employee's clinical activities to keep them within the authorized scope of practice and appropriate as required by standards of care and non-discretionary nursing assistant scope of practice provided in VHA Directives, Handbook, and Facility Standard Operating Procedures. Moreover, the VAMC employee who administered the insulin shot, Reta Mays, was not qualified, and was never qualified, to be a nursing assistant working at the Clarksburg VAMC, but she was working in that role at times alleged herein.

51.   Dr. Snider, his Leadership Team, nursing managers on Floor 3A, and supervisory employees with oversight of the VAMC employee who administered the insulin shot, Reta Mays, failed to take appropriate action to correct, retrain, and/or stop this employee from performing insulin injections on patients. They had a duty to remove her from one on one patient interaction as required by standards of care and non-discretionary employee review, medication administration standard operating procedures, and patient safety alert policies and directives. See VHA Directive 1014 and others.

52. Defendant, by and through its employees, violated their duties owed to Ret. Corporal Robert Lee Kozul including: the duty to exercise reasonable care in providing him medical treatment and timely and accurately diagnosing and treating his medical condition; the special duty to take reasonable precautions to protect him from reasonably foreseeable harm and injury, especially in his medical state; duty to identify previous similar events as adverse events and sentinel events; duty to preform root cause analyses on previous similar events in order to prevent future similar events, including the death of Mr. Kozul; duty to follow high risk medication requirements; duty to disclose dangerous conditions present in its facility that could cause him harm; duty of full disclosure of information he and his personal representative needed to make informed decisions about treatment options; duty to offer alternative location of care options in light of dangerous conditions which existed on Floor 3A; duty to refer for autopsy; and duty to fully disclose all the circumstances surrounding the causes which contributed to Mr. Kozul's death.

53. The wrongful death of Ret. Corporal Robert Lee Kozul, Sr. was a foreseeable consequence of the Defendant's negligence committed by and through its employees as set forth in all the preceding paragraphs.

54. The United States of America, and its agents and employees were negligent and breached the applicable standards of care in caring for and treating Ret. Corporal Robert Lee Kozul, Sr. as set forth in all the preceding paragraphs.

55. The United States of America is vicariously liable for the negligence of its employees and agents and it is specifically estopped from denying vicarious liability under principles of employment and agency law.

56. As a direct and proximate result of Defendant's negligence, carelessness,

recklessness, incompetent management and supervision, willful lack of care, deviations from the applicable standard of medical care, and violations of non-discretionary duties, protocols, directives and rules, Ret. Corporal Robert Lee Kozul, Sr. suffered pain, fear, mental anguish, anxiety and then death.  Ret. Corporal Robert Lee Kozul, Sr., deceased, and his Estate suffered all damages allowed under West Virginia Code §55-7-6.  In that regard, the Estate has incurred the funeral and burial expenses, as well as the loss of financial benefits; loss of services of the decedent; loss of the society of the decedent, including loss of companionship, consortium, care, assistance, attention, protection, advice, guidance, as well as all other damages allowed by law.

**WHEREFORE,** James Forrest Kozul, as Executor of the Estate of Robert Lee Kozul, Sr., demands judgment from the Defendant in such sums as will adequately compensate the Estate for the damages, harms and losses caused by Defendant, which said sums are well in excess of the amounts necessary to confer jurisdiction on this Court, and for such other relief as may be proper under the law.

**JAMES FORREST KOZUL, Executor**
**of the Estate of ROBERT LEE KOZUL, SR.**

**By Counsel**

  /s/   Tony L. O'Dell
Tony L. O'Dell (WV #5770)
Cheryl A. Fisher (WV #6379)
TIANO O'DELL, PLLC
Post Office Box 11830
118 Capitol Street
Charleston, WV 25339
(304) 720-6700
todell@tolawfirm.com
cfisher@tolawfirm.com
*Counsel for plaintiff*